```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                      Criminal No. 18-cr-102-JD
                                              Opinion No. 2019 DNH 014

Damon Austin

## O R D E R

Damon Austin is charged with two counts of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). He moves to suppress evidence discovered during a search of his home, pursuant to a search warrant, and requests a hearing on his motion. The government objects.

## Background[1]

On April 14, 2018, the Somersworth (New Hampshire) Police Department was notified by a radio call that a man had pulled a gun and pointed it at another person on Union Street in Somersworth. Doc. 22-1 at *1. The police were told that the man with the gun left the scene of the incident in a blue SUV

---

[1] The background facts are taken from the affidavit submitted in support of the search warrant, document no. 22-1, that was prepared by Officer Anthony DeFrancesco, of the Somersworth Police Department. Statements made to other officers are also summarized, as noted.

driven by a woman. The police determined that the SUV was registered to Tanya Phillips.

Officers Geary and Mulcahey responded to the area and stopped the SUV. Geary arrested the passenger in the SUV, Damon Austin, and Mulcahey arrested the driver, Tanya Phillips. In his search of Austin, Geary found "an extended magazine for a Glock .40 caliber pistol" in Austin's pants pocket.

Officer Anthony DeFrancesco arrived during the arrest process. As he approached, DeFrancesco asked Geary and Mulcahey where the gun was. Austin yelled that the gun was in the front seat of the SUV. DeFrancesco looked in the passenger side front window and saw a Glock pistol on the floor. An infant child and two dogs were also in the SUV. DeFrancesco removed the gun and secured it.

The officers arranged for the SUV to be towed and for relatives to take the infant and dogs. Geary and Mulcahey took Phillips and Austin to the Somersworth Police Department for booking.

DeFrancesco went to 18 Union Street in Somersworth where the reported gun threatening incident had occurred. He talked to Christopher and Elisa Brown, who lived there. Christopher Brown told DeFrancesco that Damon Austin was his cocaine supplier and that he had been "hanging out" with Austin for three months. He also said that Austin had been staying at the

2

Browns' house for three days and that he and Austin had been getting high in the basement.

Brown further explained that Elisa, his wife, told them that morning that they had to leave the house. Austin refused to go, which caused an issue between Elisa and Christopher. Christopher believed that Elisa was leaving him. Later he had multiple phone conversations with Austin, which included Brown threatening to kill Austin.

Elisa told DeFrancesco that her husband and Austin had been hanging out in the basement a lot. She said that they just talked. That morning, however, Elisa woke up at 3:00 am and discovered that Austin was in the basement with a woman, whom she identified as Jess. Elisa told them all that they had to leave her house and argued with Austin about leaving.[2] Austin threatened to punch her in the face. Elisa said she also argued with her husband and demanded that he get Austin and Jess to leave.

Christopher Brown went to work and then walked home, finding the house empty. He was standing outside smoking when Tanya Phillips drove up in her blue SUV. Austin jumped out of the passenger side of the SUV, and Brown and Austin got into a

---

[2] Christopher Brown told DeFrancesco that Elisa had learned that morning that Jess's family had reported her missing.

3

heated argument.[3]  During the argument, Austin walked toward Brown and pulled a gun and magazine out of his right front pocket.  Brown said the gun was a Glock, which he knew because he had been with Austin when he bought it in exchange for crack cocaine.  Austin put the magazine in the gun, chambered a round, and pointed the gun at Brown's face.  Brown got a knife from the porch.  Austin went back to the SUV and said he would be back after dark, which Brown interpreted to mean that Austin would come back to shoot the house up.  Brown also said that Phillips was there during the incident, yelling at both of them.

Brown told DeFrancesco that Austin did not have a gun when he was at his house that morning.  He also said that he knew Austin stored the gun at his home at 17B High Street in Somersworth.  Brown said that Austin sold crack, cocaine, and marijuana, and that he made crack at that house.  Brown described the process for making crack and where he had seen Austin's cooking items and crack in the kitchen at that house.

Brown said he was last at Austin's home two days before the incident, when he bought a gram of cocaine.  He said that ninety percent of his drug purchases from Austin were done there and that he had seen crack and cocaine at the house in the last two

---

[3] DeFranceso's affidavit, document no. 22-1 at *2, actually says "that is when Chris jumped out of the passenger side door of her vehicle."  Taken in context, it is clear that DeFrancesco meant that Austin jumped out of the SUV.

days. Brown said that there were two black safes in the house, one in the dining room and one in the bedroom. He said that Austin kept drugs, guns, and money in the safes. He also said that he estimated there were ten more guns in the dining room closet and that Austin had told him that he hid guns and money all over the house.

At the police department, officers checked the serial number of the Glock gun on the "NCIC" and discovered it had been stolen during a burglary in Saco, Maine. Phillips was read her <u>Miranda</u> rights, waived them, and gave a statement to DeFrancesco. She confirmed that she drove Austin to the Browns' house, where he was supposed to pick up a gaming system, but denied any other involvement in the incident. She said she did not know Austin had a gun with him and denied that there were any guns in the house. She confirmed that there was a safe in the living room and a safe in the bedroom of her house, that she had paperwork in the bedroom safe, and that Austin used the living room safe.

Austin was read his <u>Miranda</u> rights and refused to talk about the incident. During booking, however, he told Geary that he was a member of a gang, the Mattapan Avenue Crips. DeFrancesco stated in his affidavit that the Mattapan Avenue Crips are a well-known street gang, which is associated with the colors blue and black. A blue bandana was found in the SUV,

which denotes gang membership.  DeFrancesco also noted that Austin has multiple gang tattoos.  DeFranceso also reported that Austin's criminal history included misdemeanors and a felony.

Based on the facts stated in his affidavit, DeFrancesco sought and obtained a warrant to search Austin's home at 17B High Street in Somersworth on April 14, 2018.  The warrant was executed the same day.  During the search officers found seven more guns and ammunition.  They also found evidence of drug distribution, including substances that were suspected of being drugs.  In addition, they found four keys that were later confirmed to be working keys for the Mattapan Police Precinct in Boston.

The next day, April 15, Officer Geary prepared a written narrative about the arrest and a Gerstein affidavit.[4]  In his narrative, Geary wrote that Austin initially agreed to talk to him but when he asked about 18 Union Street (the Browns' residence) Austin just shook his head.  Geary states that "later Austin would make mention to the fact that he had responded to Union Street with the intent to take custody of a gaming console

---

[4] For purposes of a warrantless arrest, "[a] Gerstein affidavit is a sworn statement filed by the arresting officer to provide a proper basis for a judicial determination of probable cause."  Giroux v. Town of Danbury, 2008 WL 150655, at *7 (D.N.H. Jan. 15, 2008) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)).

6

from Christopher Brown." Doc. 20-2, at *5. Geary wrote, among other things in the Gerstein affidavit, that when he talked to her at the time of her arrest, Phillips decided to invoke her Miranda rights and not answer questions related to the incident. Doc. no. 22-6, at 1.

Officer Mulcahey also provided a narrative about the arrests on April 15. He wrote that after putting Phillips in handcuffs, he read her Miranda rights and asked if she would answer questions. Phillips told Mulcahey she did not know what happened on Union Street (at the Brown's house) because she only knew that she took Austin there to get his Sony Playstation console back. She said she did not know of any conflict between Austin and Brown and that she and Austin were on their way to Dunkin Donuts to get their daughter food. Mulcahey characterized Phillips's answers as "not providing me with very much information."

On April 19, five days after the incident and the search, ATF Special Agent McPartlin wrote a narrative, based on information provided by Detective John Sunderland of the Somersworth Police Department, about "possession of firearms by Damon AUSTIN, a previously convicted felon." Doc. 22-2, at *1. In the narrative, McPartlin wrote that attempts by the police to interview Phillips and Austin "were not successful" but that

7

Phillips admitted "to driving AUSTIN over to the victim's residence, but she did not admit to knowing that AUSTIN used a firearm during the incident."  Doc. 22-2, at *2.

## Discussion

Austin moves to suppress everything that was found in the search of his home at 17B High Street in Somersworth.  In support, he contends that the search warrant was not supported by probable cause and that the good faith exception does not prevent application of the exclusionary rule.  He also asks for a hearing on his motion.  The government objects.

A. Hearing

"An application supporting a warrant is presumptively valid."  United States v. Barbosa, 896 F.3d 60, 67 (1st Cir. 2018) (internal quotation marks and alterations omitted).  Nevertheless, "a defendant is entitled to an evidentiary hearing to test the veracity of a warrant affidavit if he can make a substantial showing that the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, which statement was necessary to the finding of probable cause."  United States v. Tanguay, 787 F.3d 44, 48-9 (1st Cir. 2015) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).  A hearing is also required if the defendant makes a

substantial showing that material information was omitted intentionally or recklessly from the warrant affidavit. Barbosa, 896 F.3d at 68.

In this case, Austin asks for an evidentiary hearing but does not address the requirements for a hearing. Austin makes no showing, much less a substantial showing, that an evidentiary hearing is necessary to test the veracity of the warrant affidavit. Instead, Austin focuses on his argument that the warrant application failed to provide probable cause to support the application.

Austin challenges the veracity of the affidavit only in the context of arguing that the good faith exception to the exclusionary rule should not apply. For that purpose, Austin contends that DeFrancesco omitted material information from the affidavit and that the descriptions in the affidavit about statements made by Phillips and Austin are contradicted by other officers' reports.

To be entitled to a hearing, Austin would have to show that DeFrancesco intentionally or recklessly included false material information or omitted material information from the warrant affidavit. As the government points out, the reports Austin cites were prepared after DeFranceso applied for and was granted

the search warrant.[5]  Therefore, Austin cannot show intentional or reckless false statements or omissions.

Further, the cited omissions or inconsistencies are not material.  DeFrancesco interviewed Phillips himself and his affidavit was prepared based on her statements to him.  Austin has not shown that Phillips's statements to others were known to DeFrancesco when he completed the warrant affidavit or that any inconsistencies detract from the information provided in DeFrancesco's affidavit.  DeFrancesco's summary of Austin's responses to other officers are consistent with their reports.

Therefore, Austin did not show any intentional or reckless false statements or material omissions from the warrant affidavit.

B. Probable Cause

The Fourth Amendment requires that probable cause exist to support an application for a search warrant. Barbosa, 896 F.3d at 67.  Probable cause for a search warrant "'exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a

---

[5] Officer Geary prepared the Gerstein affidavit and his narrative the next day, April 15.  Officer Mulcahey also prepared his report the next day.  Special Agent McPartlin provided her report on April 19, five days later.

10

particular search will turn up evidence of it.'" Tanguay, 787 F.3d at 50 (quoting United States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996)). The two requirements for probable cause for a search warrant are known as the commission and the nexus elements. United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005).

Austin states that he primarily contests the commission element of probable cause because, he contends, the affidavit did not show that Brown was a reliable informant. In a variation of that argument, Austin contends that the nexus element was not met because the affidavit does not show that Brown's statements were corroborated. The government asserts that Brown was both a reliable source of information and that his information was corroborated.

1. Source

Austin incorrectly identifies Brown as a confidential informant. Based on that theory, Austin contends that the warrant affidavit did not adequately support the reliability and trustworthiness of the informant. See United States v. Ramirez-Rivera, 800 F.3d 1, 27 (1st Cir. 2015).

The government points out that Brown was not a confidential informant. Instead, Brown was the victim of Austin's threat with a loaded gun. Credible information from the victim of a

crime is generally considered to be reliable. Barbosa, 896 F.3d at 70.

The government contends that other factors also support the reliability of Brown's information. When assessing the reliability of an informant, the court may consider a variety of factors including "(1) the probable veracity and basis of knowledge of the informant; (2) whether an informant's statement reflect first-hand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable and practicable; and (4) whether a law enforcement officer assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's information." United States v. White, 804 F.3d 132, 137 (1st Cir. 2015).

Brown explained to DeFrancesco that Austin was his cocaine supplier, that he had been using cocaine with Austin over several months, and that the dispute which lead to the threat from Austin arose from those circumstances. Brown's statements about his own criminal activity were incriminating, which bolstered his credibility. See United States v. Vongkaysone, 434 F.3d 68, 74 (1st Cir. 2006). In addition, Brown's wife, Elisa, corroborated that Austin and Brown had been hanging out in their basement and that she had told Austin to leave that

morning.  DeFrancesco talked to Brown directly and had an opportunity to assess his credibility.

The information that Brown provided about Austin's drug operations and guns that Austin kept in his home was specific and pertained to drug trafficking.  As such, the information Brown provided could only be based on his personal knowledge gained during his visits to the house.  Cf. Ramirez-Rivera, 800 F.3d at 30 (explaining that generic and innocuous description of a house does not provide reliable corroboration of an informant's tip).  Phillips confirmed that there were two safes in the house in different rooms and that Austin used at least one of them.  Although Austin charges that the affidavit was insufficient because Brown's information about the guns was not corroborated, it is not necessary to have corroboration of all of an informant's statements.  White, 804 F.3d at 137.

   2. <u>Sufficiency</u>

Austin acknowledges that if Brown's information were credible and reliable, the warrant affidavit established probable cause for the search.  As is explained above, the information Brown provided to DeFrancesco, which is repeated in the warrant affidavit, is credible and reliable.  Therefore, the warrant affidavit was sufficient to show a likelihood that Austin was engaged in drug trafficking and possessed guns and

13

that there was a sound reason to believe that a search of Austin's home at 17B High Street would turn up evidence of those offenses.  Both the commission and the nexus elements of probable cause were satisfied.

C.  Good Faith Exception

Because Austin has not shown that the search of 17B High Street was done without probable cause, there is no need to consider the good faith exception to the exclusionary rule.

## Conclusion

For the foregoing reasons, the defendant's motion to suppress (document no. 20) is denied.

SO ORDERED.

*[signature]*
Joseph A. DiClerico, Jr.
United States District Judge

January 16, 2019

cc:  Georgiana L. Konesky, Esq.
     Paul A. Maggiotto, Esq.
     Debra M. Walsh, Esq.
     U.S. Probation
     U.S. Marshal